IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| W. SILVER RECYCLING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-15-CV-00115-FM |
| | § | |
| NORMA GROUP USA, LLC a/k/a | § | |
| RG RAY, | § | |
| | § | |
| Defendant. | § | |

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

On this day, the court considered Defendant Norma Group USA, LLC a/k/a RG Ray's ("Defendant") "Defendant RG Ray's Motion to Dismiss for Lack of Jurisdiction and Memorandum of Law in Support" ("Motion") [ECF No. 8], filed May 4, 2015; Plaintiff W. Silver Recycling, Inc.'s ("Plaintiff") "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss" ("Response") [ECF No. 16], filed May 28, 2015; and "Defendant RG Ray's Reply in Support of Its Motion to Dismiss for Lack of Jurisdiction and Memorandum of Law in Support" ("Reply") [ECF No. 17], filed June 4, 2015. After due consideration of the Motion, Response, Reply, and applicable law, the Motion is **DENIED**.

**I.   BACKGROUND**

   *A.   Factual Background*

Plaintiff is a Texas corporation with its principal place of business in El Paso County, Texas,[1] and asserts it is the "only full service recycler on the United States–Mexico border."[2] Plaintiff entered into an

---

[1] *See* "Notice of Removal," Ex. C, "Plaintiff's Original Petition" ("Petition"), ECF No. 1-1, at 6, filed Apr. 20, 2015 ("Plaintiff is a Texas corporation, and is located in El Paso County, Texas.").

[2] Pl.'s Resp., Ex. 1, "Declaration of Lane Gaddy in Support of Plaintiff's Opposition to Motion to Dismiss" ("Gaddy Declaration"), at 1 ¶ 5, ECF No. 16-1.

agreement with Defendant, an Illinois corporation with its principal place of business in Michigan,[3] in either November 2012 or October 2013.[4] Pursuant to the agreement, which Plaintiff asserts was to last until December 31, 2014, Plaintiff began purchasing all scrap materials generated at Defendant's facility in Juarez, Mexico.[5] Payments for the purchases were made from Plaintiff's El Paso bank.[6]

Plaintiff provided equipment to Defendant's Juarez facility directly from Plaintiff's El Paso facility, which "included trailers and steel baskets for loading scrap."[7] All scrap purchased from the Juarez facility was taken to Plaintiff's El Paso facility.[8] Although Defendant granted Plaintiff the right to access its Juarez facility to pick up scrap, Defendant did not perform any obligations in El Paso.[9] However, Plaintiff asserts the parties' agreement required the use of "scales licensed and bonded by the State of Texas, and located at [Plaintiff]'s El Paso, Texas location, to govern the purchase transactions."[10] In

---

[3] Defendant alleges these facts apply to RG Ray, while Norma Group USA, LLC "was a Delaware entity that was legally terminated and cancelled in July 2014." Notice Removal 3 ¶ 12, ECF No. 1. Defendant contends Norma Group USA, LLC "never had business dealings with Plaintiff in any capacity," although RG Ray did have such dealings. Mot., Ex. A, "Declaration of Stacy Bright" ("Bright Declaration"), at 2 ¶ 3, ECF No. 8-1.

[4] Plaintiff avers the parties were in a "business relationship" since November 2012. Pet. 2; Gaddy Decl. 2 ¶ 12. However, Plaintiff's Petition implies that the disputed agreement was reached after the business relationship began. See Pet. 2 ("Several months into the relationship, [Defendant] requested a set formula for pricing of the scrap materials. The parties agreed that Silver would purchase all of Norma Group's scrap generated at its facility in Juarez, Mexico through December 31, 2014."). Assuming the disputed agreement was reached after November 2012, Plaintiff's averments indicate the agreement was reached in October 2013. See Gaddy Decl. 1–2 ¶¶ 8–9 (asserting that Plaintiff's representative sent Defendant an email on October 13, 2013 "outlin[ing] the proposed formulas and scope of service," and furthermore, that the parties' subsequent business dealings were consistent with the email's terms).

[5] Pet. 2. Defendant asserts the Juarez facility "is operated by a certain . . . manufacturing services supplier with which RG Ray[] contracted." Bright Decl. 2 ¶ 5. Nevertheless, Defendant indicates it exercises some level of control over the Juarez facility. See Mot. 3 ("The scrap metal at issue was all produced and sold from RG Ray's Juarez plant.").

[6] Gaddy Decl. 3 ¶ 21.

[7] Id. at 2 ¶ 16.

[8] Id. ¶ 17.

[9] See Bright Decl. 2–3 ¶ 6.

[10] Gaddy Decl. 3 ¶ 20.

2

addition, Plaintiff avers Defendant "requested copies of [Plaintiff]'s environmental permits and general liability policies" for Plaintiff's El Paso facility before entering into the business relationship.[11]

From time to time, Defendant's representatives would visit Plaintiff's El Paso facility. On February 1, 2013, a representative of Defendant visited the El Paso facility "to take a tour of the facility and view a PowerPoint presentation [that] explain[ed Plaintiff's] by-product management capabilities."[12]

On June 10, 2013, Defendant's representatives "carried out a physical audit of [Plaintiff's] facilities in El Paso, Texas to determine whether it should continue [the] business relationship."[13] The following day, Plaintiff's Chief Executive Officer, Lane Gaddy ("Gaddy"), met with a representative of Defendant in El Paso "to discuss commercial terms of the business relationship, discuss implementation of the contractual terms, and to discuss any ongoing issues that [Plaintiff] had been facing with the ongoing business relationship."[14] Including these specified meetings, Plaintiff asserts Defendant's representatives would visit the El Paso facility "at least a couple of times a year" in order to "physically audit the material being shipped to that facility from [Defendant's] facility in Juarez."[15]

On October 16, 2013, following "several phone calls regarding a new pricing structure," Gaddy emailed Defendant with "proposed formulas and scope of service" for their business relationship.[16] Plaintiff asserts "the business dealings between [the parties] were consistent with the [email's] terms" until July 22, 2014.[17] As best as can be determined, that was the day Defendant advised Plaintiff "it was

---

[11] *Id.* ¶ 23.

[12] *Id.* at 2 ¶ 15.

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 14.

[15] *Id.* at 2–3 ¶¶ 18–19. In opposition, Defendant contends its representatives "did not have contact with Texas" outside of the February and June 2013 meetings, except for a meeting in April 2014. Bright Decl. 4 ¶ 7.

[16] Gaddy Decl. 1 ¶ 8.

[17] *Id.* at 2 ¶ 9.

unilaterally terminating the parties' agreement and demanded [Plaintiff] remove its equipment from [Defendant]'s Juarez facility."[18]

On March 16, 2015, Plaintiff filed suit in the 41st District Court of El Paso County, Texas for breach of contract and unjust enrichment.[19] Defendant removed the case on April 20, 2015, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[20]

### B. Defendant's Arguments

Defendant argues Plaintiff "cannot establish any facts" justifying the exercise of general jurisdiction, as Texas is neither Defendant's state of incorporation nor its principal place of business.[21] Furthermore, Defendant avers it "does not have substantial business dealings in Texas that would otherwise justify general jurisdiction."[22] Defendant also asserts Plaintiff is not entitled to jurisdictional discovery on this issue, as Plaintiff has "fail[ed] to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction."[23]

With regard to specific jurisdiction, Defendant contends it lacks minimum contacts with Texas for several reasons. First, Defendant asserts Plaintiff "fail[ed] to allege any intentional act by [Defendant] that would establish that it purposefully availed itself of the privilege of conducting activities in Texas."[24] Second, to the extent Plaintiff has alleged Defendant committed acts related to the Texas forum, Defendant

---

[18] *See* Pet. 2 (asserting this communication occurred "[i]n July 2014").

[19] *Id.* at 1, 3. Plaintiff alternatively refers to its unjust enrichment claim as a claim for quantum meruit. *Id.* at 3.

[20] *See* Notice Removal.

[21] Mot. 5.

[22] *Id.* at 6.

[23] Def.'s Reply 11. Although Defendant also contends Plaintiff has not timely requested jurisdictional discovery, and furthermore, discovery would be "futile given the lack of material contacts with Texas," these arguments do not have to be evaluated in order to fully resolve the jurisdictional discovery issue. *Id.*

[24] Mot. 7 (emphasis removed).

avers none of the alleged acts give rise to Plaintiff's claims.[25] Third, regardless of how significant *Plaintiff's* contacts with Texas are, Defendant argues those contacts are irrelevant to whether personal jurisdiction may be exercised over itself.[26]

Alternatively, to the extent minimum contacts exist to warrant specific jurisdiction, Defendant avers exercising jurisdiction would not be fair and reasonable in light of the substantial burden the exercise would place on Defendant, as well as Texas's lack of interest in resolving the dispute locally.[27]

    C.    *Plaintiff's Arguments*

Plaintiff asserts Defendant has sufficient minimum contacts with Texas to justify specific jurisdiction. Plaintiff highlights the multiple El Paso trips by Defendant's representatives, the close proximity of Plaintiff's El Paso facility to Defendant's Juarez location, Plaintiff's equipment supplied to Defendant from El Paso, and the use of scales licensed and bonded by the state of Texas, as facts making specific jurisdiction appropriate.[28]

Plaintiff contends specific jurisdiction would not offend traditional notions of fair play and substantial justice, as many of Defendant's witnesses are located nearby in Juarez, and out-of-state employees "previously had no problem traveling to Texas" for business dealings with Plaintiff.[29] Plaintiff further avers Texas has a strong interest in adjudicating disputes regarding in-state conduct and contract performance,[30] and interstate judicial efficiency would be furthered by allowing this case to continue

---

[25] *Id.* at 7–8.

[26] *Id.* at 8.

[27] *Id.* at 9.

[28] Pl.'s Resp. 7–9.

[29] *Id.* at 9.

[30] *Id.*

without requiring additional action in a different forum.[31]  Finally, Plaintiff argues it "has a strong interest in obtaining relief in Texas, where the agreement at issue was negotiated and at least partially performed."[32]

To the extent specific jurisdiction is not warranted, Plaintiff requests jurisdictional discovery to clarify whether general jurisdiction is proper.[33]

## II. APPLICABLE LAW

Sitting in diversity, a federal district court may exercise personal jurisdiction over a foreign defendant, provided:  "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution."[34]  Courts interpret the Texas long-arm statute to reach "as far as the federal constitutional requirements of due process will allow."[35]  Therefore, this court has personal jurisdiction over Defendant if the requirements of due process are satisfied.

Due process is satisfied if the nonresident defendant:  (1) has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of "fair play and substantial justice."[36]  The defendant's "conduct and connection with the forum State [must be] such that

---

[31] *Id.* at 10.

[32] *Id.*

[33] *Id.* at 5 n.1.

[34] *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

[35] *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)) (internal quotation marks omitted); *see also* Tex. Civ. Prac. & Rem. Code §§ 17.041–.045.

[36] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *id.*; *Latshaw v. Johnston*, 167 F.3d 208, 2011 (5th Cir. 1999)).

[it] should reasonably anticipate being haled into court there."[37] Thus, "the nonresident must have some minimum contact with the forum which results from an affirmative act on [its] part [and] it must be fair and reasonable to require the nonresident to defend the suit in the forum state."[38]

Personal jurisdiction may be either general or specific.[39] For the exercise of general jurisdiction over a defendant, the connections with the forum state must be so "continuous and systematic as to render [it] essentially at home in the forum state."[40] The Fifth Circuit has noted it is "incredibly difficult" to establish general jurisdiction over a corporation outside of its place of incorporation or principal place of business.[41]

Specific jurisdiction is proper where "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."[42] The Fifth Circuit applies a three-part framework to analyze the exercise of specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
> (3) whether the exercise of personal jurisdiction is fair and reasonable.[43]

---

[37] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

[38] *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985).

[39] *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).

[40] *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014), (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

[41] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

[42] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted); *see also Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 1999).

[43] *Monkton Ins. Servs.*, 768 F.3d at 433 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

To determine if sufficient contacts exist, the court considers the quality and nature of any contacts with the state and examines the relationship among the nonresident defendant, the forum, and the litigation.[44] If the defendant lacks sufficient contacts, exercise of specific jurisdiction would violate a defendant's Fourteenth Amendment right to due process.[45]

If the court determines the nonresident defendant has sufficient contacts with the state, it must then determine whether the exercise of specific jurisdiction comports with fair play and substantial justice.[46] When evaluating this issue, a court will examine the following: 1) the burden on the defendant; 2) the interests of the forum state; 3) the plaintiff's interest in convenient and effective relief; 4) the interest of the judicial system in efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.[47]

Where a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant.[48] When a district court rules on such a motion without conducting an evidentiary hearing, the plaintiff can meet its burden by presenting a prima facie case for jurisdiction.[49] In addition, the court must accept the plaintiff's uncontroverted allegations as true and resolve all factual conflicts in the plaintiff's favor.[50]

---

[44] *Int'l Shoe*, 326 U.S. at 318–19.

[45] *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 108–09 (1987).

[46] *Burger King*, 471 U.S. at 476 (citing *Int'l Shoe*, 326 U.S. at 320).

[47] *Asahi Metal Indus.*, 480 U.S. at 113; *World–Wide Volkswagen*, 444 U.S. at 292.

[48] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (quoting *Stuart*, 772 F.2d at 1192) (internal quotation marks omitted).

[49] *Latshaw*, 167 F.3d at 211.

[50] *Id.*

### III.  DISCUSSION

*A.  General Jurisdiction*

There are no grounds for the exercise of general personal jurisdiction over Defendant.  Although all uncontroverted claims by Plaintiff must be taken as true, Plaintiff has not made any factual claims in support of exercising general jurisdiction.[51]  Defendant stated its principal place of business is in Michigan and it is incorporated in Illinois.[52]  Defendant also contends it "does not have offices, employees, subsidiaries, bank accounts, or permanent assets in Texas"[53] and "does not have any marketing or advertising campaigns that are specifically directed to Texas."[54]  Plaintiff has alleged no facts disputing these statements.

A footnote in Plaintiff's Response requests jurisdictional discovery to ascertain facts pertaining to general jurisdiction in the event that "specific jurisdiction is not available."[55]  Where a plaintiff presents factual allegations suggesting the requisite contacts between the defendant and the forum state with "reasonable particularity," the right to conduct jurisdictional discovery should be sustained.[56]  However, Plaintiff fails to allege *any* potential facts that would establish the requisite contacts for general jurisdiction.  Plaintiff does not offer any allegations conflicting with Defendant's statements against general jurisdiction, or suggesting jurisdictional discovery would produce relevant information.[57]  Accordingly, jurisdictional discovery will not be allowed.

---

[51] *See generally* Pl.'s Resp.

[52] Notice Removal 3 ¶ 12; Mot. 5.

[53] Mot. 6.

[54] Bright Decl. 3 ¶ 4.

[55] Pl.'s Resp. 5 n.1.

[56] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting Toys *"R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

[57] *See generally* Pl.'s Resp.

B.     *Specific Jurisdiction*

In contrast to its general jurisdiction argument, Plaintiff has advanced a variety of facts in support of specific jurisdiction.

1.     Minimum Contacts

The Supreme Court recently clarified the law of personal jurisdiction in the 2014 case *Walden v. Fiore*.[58] In *Walden*, a security officer at a Georgia airport seized cash from Nevada travelers within the airport, while aware the travelers were traveling to Nevada.[59] Subsequently, the officer drafted an allegedly false affidavit in Georgia to show probable cause for the cash's forfeiture.[60] The travelers sued the officer in Nevada.[61] The Court concluded the officer was not subject to personal jurisdiction in Nevada. It held the officer's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."[62] In order to warrant personal jurisdiction within a forum, the Court stated, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."[63]

In light of *Walden*, whether Defendant had significant business dealings with Plaintiff, a Texas resident, does not determine whether Defendant is subject to personal jurisdiction in Texas. Rather, the contacts Defendant made with the Texas forum must be examined in order to assess personal jurisdiction.

*Moncrief Oil International Inc. v. OAO Gazprom* is a useful comparator. In this case, a Russian firm ("Zapsib") entered into agreements with a Texas business, by which the Texas business would receive

---

[58] 134 S. Ct. 1115 (2014).

[59] *See id.* at 1119 (noting that the seizure occurred after the plaintiffs were approached by the defendant and another officer "at the departure gate for their flight to Las Vegas").

[60] *Id.* at 1119–20.

[61] *Id.* at 1120.

[62] *Id.* at 1125.

[63] *Id.* at 1126.

an interest in a Russian natural gas extraction project in exchange for securing financing, providing technical expertise, and investing a sum of money.[64] After Zapsib's parent company walked away from the agreements, the Texas plaintiff sued Zapsib and other companies in Texas federal court.[65] The Texas plaintiff argued personal jurisdiction could be exercised over Zapsib because the Russian company: "(1) enter[ed] into contracts with [the Texas plaintiff], (2) kn[ew] from the outset that [the plaintiff was] a Texas resident, (3) acknowledg[ed] and approv[ed] of [the plaintiff's] substantial performance in Texas, and (4) sen[t] an executive to visit Texas . . . in furtherance of that performance."[66] On appeal, the Fifth Circuit held personal jurisdiction could not be exercised over Zapsib. Not only did the court note "merely contracting with a resident of Texas is not enough to establish minimum contacts,"[67] but also "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas."[68] Although the court noted "Zapsib surely could have foreseen that [the plaintiff] might perform many of its duties in Texas,"[69] the court noted this was not dispositive as "the hub of the parties' activities" was not in Texas.[70]

At first glance, the facts in *Moncrief Oil International* appear to be similar to the facts in the instant case. Although the current parties' business relationship involved commercial activity in Texas, almost all of the Texas contacts (for example, transporting and subsequently handling scrap in El Paso, as

---

[64] 481 F.3d at 310–11.

[65] *Id.* at 311.

[66] *Id.* at 312.

[67] *Id.* at 311 (citing *Latshaw*, 167 F.3d at 211).

[68] *Id.* (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983)).

[69] *Id.*

[70] *Moncrief Oil Int'l*, 481 F.3d at 312 (internal quotation marks and citation omitted).

well as wiring payments from an El Paso bank) were carried out by *Plaintiff*. Furthermore, although Plaintiff has asserted multiple El Paso visits by Defendant's representatives, Defendant's transitory presence in Texas, even if in furtherance of Texas activities, is not sufficient to justify personal jurisdiction.[71]

However, there is a critical difference to distinguish this case from *Moncrief Oil International*: Defendant not only could have foreseen Texas activities in the business relationship, it *mandated* Texas activities pursuant to its agreement. The parties agreed that in weighing purchased scrap, Plaintiff "was to use scales licensed and bonded by the State of Texas, and located at [Plaintiff]'s El Paso, Texas location, to govern the purchase transactions."[72] Consequently, under the terms of the parties' agreement, Plaintiff was required to perform weighing obligations in Texas.[73] These Texas activities or contractual obligations were more than foreseeable to Defendant; Defendant *required* them.[74] In addition, Defendant's pre-agreement review of Plaintiff's environmental permits and general liability policies for the El Paso facility[75] further evinces Defendant's intent for Plaintiff to perform in Texas.[76] Moreover, as the agreement's terms mandated weighing in Texas, Plaintiff's Texas performance was necessary rather than merely fortuitous. As Plaintiff's Texas contacts were contractually required, rather than the sort of

---

[71] *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("[W]e [cannot] conclude that the fact that Helicol sent personnel into Texas for training in connection with the purchase of helicopters and equipment in that State in any way enhanced the nature of Helicol's contacts with Texas.").

[72] Gaddy Decl. 3 ¶ 20.

[73] Put another way, if Plaintiff had used an out-of-Texas weighing as the basis for a transaction, then *Plaintiff* would have violated the agreement's alleged terms.

[74] *See Cent. Freight Lines*, 322 F.3d at 383 (finding sufficient contacts for specific jurisdiction when a foreign defendant's activities had "the foreseeable and intended result of causing economic activity in the forum state").

[75] Gaddy Decl. 3 ¶ 23.

[76] Defendant's review of permits and policies would not be sufficient, standing alone, to support personal jurisdiction. *See Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1026–27 (5th Cir. 1983) (holding personal jurisdiction in Texas was not proper for a defendant even through two of the defendant's representatives visited the plaintiff's Texas facility before the parties entered into a contract).

"unilateral activities" found insufficient to justify personal jurisdiction in *Moncrief Oil International*,[77] they constitute minimum contacts that could justify exercising personal jurisdiction over Defendant.

        2.        <u>Whether the Case Arises Out of or Relates to Defendant's Contacts</u>

Defendant's minimum contacts in support of specific jurisdiction do not necessarily mean jurisdiction is actually justified. The cause of action must arise out of or relate to Defendant's contacts with the forum.[78]

Defendant argues it did not perform any acts in Texas giving rise to Plaintiff's cause of action. Defendant notes it provided scrap metal to Plaintiff in Juarez, and furthermore, "any harm purportedly suffered by Plaintiff resulted from conduct that occurred from either Juarez or at [Defendant]'s corporate headquarters in Michigan (where any decision to terminate the relationship would have been made)."[79]

Indeed, Plaintiff has not alleged any facts indicating Defendant breached the parties' agreement from within Texas. Although Defendant might have signaled termination by directing a communication at Texas, an exchange of communications is not sufficient to satisfy the requirements for specific jurisdiction.[80] Nevertheless, the Supreme Court's decision in *Burger King Corp. v. Rudzewicz* indicates the applicable in-forum contacts do not have to be in-forum misconduct.

In *Burger King*, a Michigan individual entered into a twenty-year franchise agreement with a Miami, Florida-based fast-food company to operate a restaurant in Michigan.[81] After the individual missed several monthly payments to Miami, the company terminated the franchise and ordered the individual to

---

[77] 481 F.3d at 312.

[78] *Helicopteros Nacionales de Colom.*, 466 U.S. at 414.

[79] Mot. 8.

[80] *See Moncrief Oil Int'l*, 481 F.3d at 312 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)) ("An exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law.").

[81] 471 U.S. at 464, 466–67.

vacate his premises.[82] When the individual refused and continued operating the Michigan restaurant, the company sued in Florida federal court.[83] Although the Supreme Court observed the Michigan defendant had "no physical ties to Florida" other than an associate's taking a training course in Miami, personal jurisdiction was still proper in Florida.[84] The Court observed that, because the individual's "refusal to make the contractually required payments in Miami, and his continued use of [the company]'s trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida . . . it was, at the very least, presumptively reasonable for [the individual] to be called to account there for such injuries."[85]

In the instant case, even if Defendant's wrongful acts occurred outside Texas, they nevertheless related to a business relationship that not only contractually required activity within Texas, but also situated the hub of the parties' activities in Texas (in conjunction with Mexico).[86] Similar to *Burger King*, where personal jurisdiction was upheld for a defendant wrongfully missing payments and operating a franchise outside Florida,[87] Defendant allegedly breached an agreement with out-of-state communications and/or actions. Accordingly, Plaintiff's claims relate to Defendant's Texas contacts, thereby supporting

---

[82] *Id.* at 468.

[83] *Id.* at 479, 487.

[84] *Id.* at 480.

[85] *Id.*

[86] *See Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1010 (5th Cir. 1982) ("Mississippi was clearly the hub of the parties' activities, from which the Mississippi plaintiff directed at the defendant's order the movement of its trucks throughout the nation."); *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (distinguishing the case from *Mississippi Interstate Express*, as under the facts provided, "all material performance occurred in Mexico[, the parties] negotiated with Mexican officials in Mexico[, and] the ship charters were prepared in Mexico," such that "[i]t [could not] be said that the activities of the parties . . . were centered on Texas").

[87] In a sense, the missed payments could be viewed as in-Florida contacts, insofar as the defendant was *required* to send payments to Florida but decided, in Michigan, not to do so. As *Burger King* placed importance on the wrongful operation of a franchise in Michigan, the Florida payment requirement, although important for the Court's holding, does not appear to have been determinative.

specific jurisdiction.

### 3. Whether Exercising Specific Jurisdiction is Fair and Reasonable

Even if the requisite contacts exist, it must be fair and reasonable to exercise jurisdiction over Defendant. Defendant contends a variety of facts indicate jurisdiction is neither fair nor reasonable in the instant case.

Defendant contends litigating this case in Texas "would cause undue hardship [for Defendant], as it would require individuals to travel from Michigan or Illinois for extended periods to participate in trial, depositions, and various hearings."[88] Defendant's argument disregards that the activity surrounding the agreement's performance is centered in the El Paso–Juarez area. Defendant's significant presence in Juarez arising from its manufacturing operations indicates it would be burdened even if litigation proceeded in Michigan or Illinois.[89] Therefore, this factor disfavors Defendant.

Defendant avers Texas merely has a minimal interest in this controversy,[90] however, this argument is unpersuasive. Although Defendant characterizes this case as "concern[ing] scrap metal sold by a plant in Juarez, Mexico,"[91] it also necessarily concerns the purchaser of that scrap metal, a Texas company. Moreover, Texas has codified its interest in resolving controversies concerning its residents' in-state business operations.[92] As Texas clearly has a strong interest in this case, the second factor disfavors Defendant.

Defendant has not contested any of the other factors, accordingly, they are irrelevant for assessing

---

[88] Bright Decl. 3 ¶ 10.

[89] There is no indication Defendant ceased its Juarez activities after terminating its business relationship with Plaintiff.

[90] Mot. 9.

[91] *Id.*

[92] *See* Tex. Civ. Prac. & Rem. Code § 17.042 (stating that "a nonresident does business in [Texas] if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in [Texas]").

fairness and reasonableness.[93]  As Defendant has failed to demonstrate any factor disfavors personal jurisdiction, Defendant's argument is rejected.

## IV.     CONCLUSION

After due consideration, Defendant's contacts with Texas are sufficient to justify specific jurisdiction.  Furthermore, exercising this jurisdiction is fair and reasonable.  Accordingly, "Defendant RG Ray's Motion to Dismiss for Lack of Jurisdiction and Memorandum of Law in Support" [ECF No. 8] is **DENIED**.

**SO ORDERED**.

**SIGNED** this **8th** day of **September, 2015**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

---

[93] Even so, it does not appear any of the uncontested factors favor Defendant.  As Plaintiff is a Texas resident, its most convenient options for obtaining relief are in Texas.  Furthermore, there is no indication this controversy would be more efficiently resolved by litigation in either Michigan or Illinois.  Finally, no fundamental social policies of Michigan or Illinois will be weakened by Texas litigation of a trade dispute substantially concerning activities in Texas and Mexico.